Filed 12/9/24  Piedra v. City of Long Beach CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| REINALDO PIEDRA, | B332748 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 22STCV03072) |
| v. | |
| CITY OF LONG BEACH, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel M. Crowley and Lisa R. Jaskol, Judges. Affirmed.

The Gould Law Firm, Michael A. Gould, and Aarin A. Zeif, for Plaintiff and Appellant.

Office of the Long Beach City Attorney, Dawn McIntosh, City Attorney, and Michael A. Swift, Deputy City Attorney, for Defendant and Respondent.

_____

## INTRODUCTION

Plaintiff and appellant Reinaldo Piedra appeals from a judgment of dismissal following a successful demurrer brought by defendant and respondent City of Long Beach (the City). Piedra was bitten by a pit bull and then sued City for his injuries under a theory of negligence. Piedra asserted the City was on notice that the pit bull was a vicious animal because the dog had attacked a city attorney six years prior to his injuries. Piedra alleged the City was required but failed to hold a public hearing under Long Beach Municipal Code section 6.16.270 to determine the "vicious animal" status of the pit bull, which would have been then euthanized or contained. The trial court sustained the City's demurrer, concluding the City was immune from liability for its discretionary acts under Government Code section 815.[1]

Piedra argues this was error because the City is liable under section 815.6, which creates an exception to governmental immunity when the entity fails to discharge a mandatory duty imposed by an enactment. Alternatively, Piedra argues that even if the City is immune from liability for its discretionary decisions and acts, the City is liable here because it failed to exercise such discretion. We affirm because the City is immune from liability under section 815.

---

[1] All undesignated statutory references are to the Government Code. All undesignated municipal code references are to the Long Beach Municipal Code.

## FACTS AND PROCEDURAL BACKGROUND

**1.    Piedra's Lawsuit**

In 2021, a pit bull attacked and bit Piedra.  In January 2022, Piedra sued the City, the dog's owner, and other defendants, alleging the City failed to take action to prevent Piedra from being bitten by the dog, which the City knew was a danger to the public.  After the court sustained multiple demurrers, in October 2022, Piedra filed the operative third amended complaint (TAC), which alleged causes of action for general negligence and strict liability.  Only the first cause of action for general negligence was asserted against the City.

The first cause of action alleged that in April 2015, the City received complaints that the dog was running loose in the neighborhood.  The City investigated the dog's owner's residence and found that the side gate in the driveway allowed the dog to slip under and run free.  The City issued a warning to the dog's owner for a leash violation, advising her that any further complaints could result in the dog being seized for public safety reasons.

In June 2015, without provocation, the dog allegedly bit a city attorney on his inner thigh while the City was performing a raid on a condemned property where the dog's owner lived.  The City prepared a bite report following the incident and informed the dog's owner that it intended to impound her dog.  After holding the dog for 10 days, the City determined that it would not place a "vicious hold" on the dog and informed the dog's owner that she could redeem her dog.

Piedra alleged the City violated Municipal Code section 6.16.270 by failing to hold a public hearing to determine whether the dog was a "vicious animal," within the meaning of Municipal

3

Code section 6.16.250, subdivision A. Piedra asserted the dog would not have attacked him had the City held the meeting because the City would have "humanely destroyed" or "issue[d] certain rules and regulations pertaining to the keeping and containing of" the dog.

## 2.    The Demurrer

In November 2022, the City demurred to the TAC on the same grounds as its prior demurrers. The City maintained that it was immune from direct liability under section 815 and from vicarious liability under section 820.2. The City contended Municipal Code section 6.16.270 did not impose a mandatory duty to hold a public hearing as to the dog's "vicious animal" status because such a hearing was required only when there was sufficient evidence giving rise to a suspicion that the dog met the qualifications of a "vicious animal." In addition, the City asserted that the connection between the City's last involvement with the dog and Piedra's injuries years later was tenuous.

Piedra argued in opposition that the City had a mandatory duty under section 815.6 because the pleaded Municipal Code sections use mandatory language requiring the City to hold a public hearing when a dog bites. Piedra also asserted the City was not immune under section 820.2 because its employees never consciously exercised discretion to consider if the dog should be destroyed.

In sustaining the City's demurrer, the trial court found Piedra "failed to identify a statute that imposes liability on the City for his injuries." The court concluded that "[n]one of [the pleaded Long Beach] ordinances impose liability on the City for a dog bite." The court also found Piedra had "no factual allegations that establish how the City's failure to hold [the public hearing]

4

was a substantial factor in causing damages to Plaintiff 6 years later."  The court denied Piedra leave to amend, finding he failed to articulate how he could amend his pleading to render it sufficient.

On September 11, 2023, the court entered a judgment dismissing Piedra's cause of action against the City.  Piedra timely appealed.

## DISCUSSION

Piedra contends it was error to sustain the demurrer because prior to his injuries, the City had a mandatory duty under section 815.6 to hold a public hearing as to the dog's "vicious animal" status pursuant to Municipal Code section 6.16.270.  Alternatively, Piedra argues that even if the City has immunity for its discretionary decisions and acts, the City is liable because it failed to exercise such discretion.

## 1.    Standard of Review

"On review from an order sustaining a demurrer, 'we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose.' " (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.)

"A demurrer tests the legal sufficiency of the challenged pleading." (*Brown v. Los Angeles Unified School Dist.* (2021) 60 Cal.App.5th 1092, 1103.)  "We accept as true all material facts properly pleaded in the complaint, but do not assume the truth of contentions, deductions, or conclusions of fact and law." (*Ibid*.) "The question of a plaintiff's ability to prove the allegations, or the possible difficulty in making such proof, does not concern the

5

reviewing court and plaintiffs need only plead facts showing that they may be entitled to some relief." (*Ibid.*)

Central to this appeal is whether Piedra alleged that the City had a mandatory duty. "Whether an enactment creates a mandatory duty is a question of law: 'Whether a particular statute is intended to impose a mandatory duty, rather than a mere obligation to perform a discretionary function, is a question of statutory interpretation for the courts.' " (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 499 (*Haggis*).) "The enactment's language 'is, of course, a most important guide in determining legislative intent, [but] there are unquestionably instances in which other factors will indicate that apparent obligatory language was not intended to foreclose a governmental entity's or officer's exercise of discretion.' " (*Ibid.*) "In construing the statute, we must give the statute a reasonable construction that conforms to the apparent purpose and intention of the lawmakers, and 'the various parts of the statutory enactment must be harmonized by considering the particular clause in the context of the whole statute.' " (*Department of Corporations v. Superior Court* (2007) 153 Cal.App.4th 916, 927.)

2. **Public Entity Liability**

"Public entities in California are not liable for tortious injury unless liability is imposed by statute. (§ 815.) '[S]overeign immunity is the rule in California; governmental liability is limited to exceptions specifically set forth by statute.' " (*San Mateo Union High School Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418, 427 (*San Mateo*); § 815 ["A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."].) "However, this broad grant of immunity is subject to

6

the exception contained in Government Code section 815.6 for certain ministerial acts not subject to the exercise of discretion." (*Danielson v. County of Humboldt* (2024) 103 Cal.App.5th 1, 13 (*Danielson*).)

Section 815.6 states: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." "Thus, the government may be liable when (1) a mandatory duty is imposed by enactment, (2) the duty was designed to protect against the kind of injury allegedly suffered, and (3) breach of the duty proximately caused injury." (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 348.)

"[A]pplication of section 815.6 requires that the enactment at issue be *obligatory*, rather than merely discretionary or permissive, in its directions to the public entity; it must *require*, rather than merely authorize or permit, that a particular action be taken or not taken." (*Haggis, supra,* 22 Cal.4th at p. 498.) Courts have "recognized that under section 815.6, inclusion of the term 'shall' in an enactment 'does not necessarily create a mandatory duty; there may be "other factors [that] indicate that apparent obligatory language was not intended to foreclose a governmental entity's or officer's exercise of discretion." [Citations.]' [Citation.] 'In determining whether a mandatory duty actionable under section 815.6 had been imposed, the Legislature's use of mandatory language (while necessary) is not the dispositive criteria. Instead, the courts have focused on the

7

particular action required by the statute, and have found the enactment created a mandatory duty under section 815.6 only where the statutorily commanded act did not lend itself to a normative or qualitative debate over whether it was adequately fulfilled.' [Citation.] 'It is not enough,' the California Supreme Court has declared, 'that the public entity or officer have been under an obligation to perform a function if the function itself involves the exercise of discretion.' " (*San Mateo, supra,* 213 Cal.App.4th at p. 429.)

## 3. Plaintiff Failed to Plead a Mandatory Duty

Piedra asserts the City violated a mandatory duty created by Municipal Code section 6.16.270, which states in relevant part: "Where there exists evidence sufficient to give rise to the suspicion that a dog or other animal falls within the provisions of Subsection 6.16.250.A., the Director shall cause a public hearing to be conducted for the purpose of determining whether the dog or other animal is a vicious animal."[2] (Mun. Code, § 6.16.270, subd. B.) Piedra asserts this Municipal Code section imposes a mandatory duty on the City because it indicates that the Director *shall* hold a public hearing if there is evidence that a dog is a "vicious animal."

As mentioned above, the inclusion of "shall" does not in and of itself create a mandatory duty. We must evaluate the nature of the statutorily commanded act to determine whether there is a mandatory duty. (*San Mateo, supra,* 213 Cal.App.4th at p. 429.) While Municipal Code section 6.16.270 specifies that "the

---

[2] "Director" means the City's "Director of Animal Care Services Bureau of the Department of Health and Human Services or his/her designee." (Mun. Code, § 6.04.020.)

8

Director shall cause a public hearing to be conducted," this act is dependent on the Director's decision that "there exists evidence sufficient to give rise to the suspicion that a dog or other animal falls within the provisions of Subsection 6.16.250.A." (Mun. Code, § 6.16.270, subd. B.) Municipal Code section 6.16.250, subdivision A, states: " 'Vicious animal' is any animal which bites or attempts to bite any human or animal without provocation, or which has a disposition or propensity to attack, bite or menace any human or animal without provocation and endangers the health and safety of any person."

Piedra asserts that the vicious animal definition *requires* the City to hold a public hearing when a dog actually bites without regard to whether the animal was provoked. Citing the "last antecedent rule," Piedra contends that the phrase "without provocation" modifies only the immediately preceding phrase "attempts to bite," and not "any animal which bites." (Mun. Code, § 6.16.250, subd. A.)

We disagree with Piedra's construction of the statute. "A longstanding rule of statutory construction—the 'last antecedent rule'—provides that 'qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote.' " (*White v. County of Sacramento* (1982) 31 Cal.3d 676, 680.) However, an exception to the last antecedent rule provides that " ' "[w]hen several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." ' [Citations.]" (*Id.* at pp. 680–681.)

Applying those rules here, we conclude that "without provocation" modifies both "bites" and "attempts to bite."

9

Although "bites" is separated from "attempts to bite" by the conjunction "or," the phrases are parallel because they share the same subject—"any animal"—and the same object—"any human or animal." (Mun. Code, § 6.16.250, subd. A [" 'Vicious animal' is any animal which bites or attempts to bite any human or animal without provocation"].) Since the verbs are closely related and connected in the sentence structure, the natural construction of the language demands that the adverbial modifier, "without provocation," applies to both "bites" and "attempts to bite." Thus, under Municipal Code section 6.16.250, subdivision A, a dog that bites a human is categorized as a vicious animal only if it bit without provocation.

Reading Municipal Code sections 6.16.250, subdivision A, and 6.16.270, subdivision B, together, we conclude that the City was required to hold a public hearing about the pit bull only if the Director determined there was sufficient evidence that the pit bull bit the city attorney without provocation or had a disposition or propensity to attack or bite. In other words, there was no mandatory duty to hold the hearing if the City concluded that there did not exist "evidence sufficient to give rise to the suspicion that" (Mun. Code, § 6.16.270, subd. B) the pit bull was a vicious animal under Municipal Code, section 6.16.250, subdivision A.

In the present case, the operative complaint alleged that the City determined the pit bull was not vicious after quarantining the dog for 10 days. This determination necessarily included an implicit finding that the animal did not bite the city attorney without provocation during the City's raid on the owner's home. Therefore, the City did not have a mandatory duty to hold a hearing.

10

The decision of whether to hold a public hearing at issue in the present case is much like that in *Danielson*, *supra*, 103 Cal.App.5th 1, which involved an appeal following the trial court's sustaining of a demurrer based on governmental immunity. There, the plaintiff, who was mauled by two pit bulls, sued the County of Humboldt for her injuries. (*Id*. at p. 9.) She asserted the county had violated its mandatory duty to petition for a hearing to determine whether one of the pit bulls, who had bitten a neighbor seven months prior to her injuries, was potentially dangerous or a nuisance. (*Id*. at p. 18.) The county's ordinance required an animal control officer or a law enforcement officer to investigate and determine whether probable cause existed that a dog was potentially dangerous, vicious, or a nuisance. If there was probable cause, the officer was to petition the Animal Control Director for a hearing to decide if the dog should be declared as such. (*Id*. at pp. 14–15.) Like in the case at bar, the plaintiff urged that the language "shall petition" made the duty to conduct a hearing mandatory. (*Id*. at p. 18.)

The *Danielson* court disagreed. The court stated: "[W]hether to investigate is discretionary, and there are no explicit instructions directing how such an investigation should be conducted, how long it can continue, or what must be done at its conclusion. Under these circumstances, the ordinance creates no mandatory duty because it presents ' "debatable issues over whether the steps taken by the [county] *adequately* fulfilled its obligation." ' " (*Danielson*, *supra*, 103 Cal.App.5th at p. 19.) The court held that the appellant's pleadings were insufficient because plaintiff had not alleged that the animal control officer concluded the investigation or made a probable cause determination. (*Id*. at p. 20.)

11

Similarly, in *County of Los Angeles v. Superior Court* (2012) 209 Cal.App.4th 543, 547 (*County of Los Angeles*), the appellate court concluded the County of Los Angeles did not have a mandatory duty to take certain actions to prevent an attack. The ordinance at issue, like the one in *Danielson*, required the director of the department of animal care and control to petition the superior court for a determination of whether a dog should be declared dangerous or vicious after an animal control or law enforcement officer investigated and determined that probable cause existed that the dog was dangerous or vicious. (*Id*. at p. 553.) The plaintiffs argued the county breached its mandatory duty to petition the superior court for this determination because in the two years prior to the attack on the plaintiffs, the county investigated complaints that the dogs were jumping their owner's fence, running loose, and chasing people. (See *id*. at pp. 548, 553.)

The appellate court concluded that the county had no obligation to act until an animal control officer or a law enforcement officer determined there was probable cause that the dog was potentially dangerous or vicious. (*County of Los Angeles*, *supra*, 209 Cal.App.4th at p. 553.) As the plaintiffs did not produce any evidence at summary judgment that the county made such a determination, the county did not have a duty to petition the court. (*Ibid*.) The appellate court further explained that "[a]n enactment requiring a public entity to conduct an investigation under certain circumstances does not, without more, impose a mandatory duty to take certain specified action." (*Id*. at p. 554.)

Like the ordinances in *Danielson* and *County of Los Angeles*, the ordinances in the present case did not require a

hearing until a city official considered the evidence and made an assessment that the dog was vicious. Other than mandating notice to the animal's owner, Long Beach's Municipal Code has no specific guidelines directing the City as to how it should investigate or evaluate evidence about provocation and the animal's behavior. (See *id.*, § 6.16.270.) Thus, whether to conduct a public hearing about the dog in the present case involved an "inherently subjective question" and "the exercise of considerable discretion based on consideration" of the evidence. (*County of Los Angeles, supra,* 209 Cal.App.4th at p. 550.)

Accordingly, we conclude Municipal Code sections 6.16.270 and 6.16.250 do not impose a mandatory duty under section 815.6. Absent a mandatory duty, Piedra cannot state a claim against the City.[3] (See *Danielson, supra,* 103 Cal.App.5th at pp. 13–14.)

Citing *Bell v. State of California* (1998) 63 Cal.App.4th 919, 929, Piedra argues the City is liable for the dog bite because it *failed* to exercise its discretion. But even if governmental immunity is limited to the entity's "actual exercise of discretion"

---

[3] The TAC additionally pleads violations of Municipal Code sections 6.04.040, 6.16.280, and 6.16.290, which respectively discuss the City's duty to take up and deliver loose animals, determine whether a vicious animal should be destroyed, and issue rules for containing a vicious animal that is not destroyed. In his appellate briefs, plaintiff does not address how these sections created a mandatory duty separate from the failure to hold a hearing. Therefore any such assertion is forfeited. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146, 153 [absent cogent argument supported by legal analysis, the appellate court may treat the claim as forfeited].)

13

(*ibid.*), Piedra pled facts that showed the City in fact exercised discretion. The TAC stated that in June 2015, "Long Beach Animal Care Services/Animal Control prepared a bite report" after the pit bull bit the city attorney. Piedra alleged that the City immediately quarantined the pit bull, and that the City's Animal Control informed the dog's owner that it intended to impound the pit bull.[4] Then, "[o]n June 13, 2015, Long Beach Animal Control/Animal Control determined there was no vicious hold on [the] vicious Pitbull and informed [the owner] that she could redeem the vicious Pitbull 'with a promissory if needed.'" In sum, plaintiff specifically alleged the City determined that the pit bull need not be held in impound as a vicious animal and then released the dog to its owner. The decision that the pit bull did not constitute a vicious animal was clearly an exercise of discretion as discussed above.

---

[4] Pursuant to Municipal Code section 6.16.260, "Any law enforcement officer or Animal Care Services Bureau enforcement officer or inspector of the City shall have the authority summarily and immediately to impound a dog or other animal where there is evidence it is vicious."

Therefore, the City is immune from liability pursuant to section 815.[5] We conclude the trial court did not err in sustaining the demurrer.[6]

---

[5] We note that Piedra argues the City is not immune from liability under section 820.2. Section 820.2 states, " '[A] public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.' " (*Johnson v. State* (1968) 69 Cal.2d 782, 787.) Although section 820.2 facially insulates public employees, but not public entities, from liability, public entities can assert section 820.2 defensively because " 'a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability' (Gov. Code, § 815.2, subd. (b))." (*Johnson,* at p. 787.) As the TAC does not assert claims against individual employees, and because we conclude the City is immune from liability under section 815, we need not address the City's derivative immunity under section 820.2.

[6] Because Piedra does not challenge whether the trial court erred by denying leave to amend, we do not consider this issue.

## DISPOSITION

We affirm the judgment of dismissal.  Defendant and respondent City of Long Beach is awarded its costs of appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


BERSHON, J.*


We concur:


EGERTON, Acting P. J.


ADAMS, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16